Steven L. Yarmy, Esq.
Nevada Bar No. 8733
7464 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 586-3513
(702) 586-3690 FAX
sly@yarmylaw.com
Attorney for the Debtors
and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>TRACY LEE HURST-CASTL,<br><br>Debtor. | Case No.: 23-10410-MKN<br><br>Small Business Subchapter V<br><br>Chapter 11<br><br>Adv. No: 23-01089 |
| THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES, A NEVADA LIMITED LIABILITY COMPANY,<br><br>Plaintiff,<br><br>Vs.<br><br>TRACY LEE HURST-CASTL,<br><br>Defendant. | **DEFENDANT TRACY LEE HURST-CASTL'S AMEMDED COUNTERCLAIM** |
| TRACY LEE HURST-CASTL<br><br>Counterclaimant,<br><br>LISA A. RASMUSSEN, ESQ., an Individual, KRISTINA WILDEVELD, ESQ., an Individual,<br><br>Counter Defendants. | |

1

## DEFENDANT TRACY LEE HURST-CASTL'S AMEMDED COUNTERCLAIM

COMES NOW Debtor TRACY LEE HURST-CASTL, by and through her attorney Steven L. Yarmy, Esq., and hereby files her Amended Counterclaim as follows:

### PARTIES

1.     Plaintiff/Counter Defendant THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES, A NEVADA LIMITED LIABILITY COMPANY is a limited liability company registered with the State of Nevada, operating its business out of Las Vegas, Nevada.

2.     Counter Defendant LISA A. RASMUSSEN, Esq. is a resident of Clark County, Nevada.

3.     KRISTINA WILDEVELD, Esq. is a resident of Clark County, Nevada.

4.     Defendant/Counterclaimant is a resident of the State of Nevada and is a debtor in the underlying Chapter 11 Proceeding No. 23-10410-mkn, filed on February 4, 2023.

### AMENDED COUNTERCLAIM

COMES NOW Defendant/Counterclaimant TRACY LEE HURST-CASTL (hereinafter "Counterclaimant"), by and through her attorney Steven L. Yarmy, Esq., and hereby Counterclaims against the Plaintiff/Counter Defendant THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES as follows:

### GENERAL ALLEGATIONS

1.     Counterclaimant was suffering serious post-operative complications and developed a chronic infection, undergoing the first emergency surgery on March 29, 2019, then hospitalized for 5 days.  The Counterclaimant's condition worsened and underwent a second emergency surgery on June 25, 2019.

2

2.      On November 14, 2019, Counterclaimant was hospitalized again with osteomyelitis, a rare bone infection that progressed into life threatening sepsis.  Counterclaimant underwent a third emergency surgery where the surgeons removed a portion of her skull when they **discovered that a screw and sponge** was left in her head from the prior Cedar Sinai surgeons, then Counterclaimant remained hospitalized for 2 weeks and was discharged on home nursing care receiving daily IV antibiotic for 8 weeks.

3.      On April 7, 2020, Ms. Wildeveld was introduced to Counterclaimant through a mutual friend Dr. Stephanie Youngblood over the phone.  Dr. Youngblood stated she trusted Ms. Wildeveld to handle Counterclaimant's medical malpractice matter and would take special care as her friend, trusting her ability to protect her being that she was weak, disabled, and extremely compromised medically and cognitively.

4.      On April 9, 2020, during the initial consultation with Ms. Wildeveld and Ms. Rasmussen they both stated that they are licensed in California and would initiate her medical malpractice complaint from their Los Angeles office.

5.      Initially Counterclaimant did not discuss the PennyMac civil case with Ms. Wildeveld when they initially spoke by phone; Counterclaimant already had legal counsel retained for that case.  Mr. Thomas Michaelidis was retained one year prior to her introduction to Ms. Wildeveld, in March 2019.

6.      The initial discussion with Wildeveld was only for a consultation concerning Counterclaimants medical malpractice case

7.      At the initial consultation Ms. Wildeveld introduced Counterclaimant to Ms. Rasmussen, stating she would be working on the case she handles the civil cases in her office and Ms. Wildeveld only practices criminal law.

8.      On April 7, 2020, Counterclaimant's initial introduction to Ms. Wildeveld was by phone with Dr. Stephanie Youngblood, a mutual friend who was assisting her with finding legal representation to specifically address her MEDICAL MALPRACTICE MATTER regarding the gross negligence she suffered from the Cedar Sinai neurosurgeons caused her life threatening complications post-surgery.  Dr. Youngblood put Ms. Wildeveld on the phone she stated that she is licensed in both California and Nevada and could assist her with the MEDICAL MALPRACTICE CASE they agreed to meet in her office for a formal consultation free of charge.

9.      Counterclaimant scheduled to meet with Ms. Wildeveld.  During their initial introduction by phone with Dr. Youngblood, they agreed to meet in her office to further discuss the specifics of the MEDICAL MALPRACTICE.  Ms. Wildeveld requested that Counterclaimant bring her medical records with her.

10.     Upon starting the meeting Ms. Wildeveld showed Counterclaimant to her conference room where Ms. Rasmussen was sitting at the table.  They discussed Counterclaimant's medical situation, then Counterclaimant took off her cap and showed them her deformed, concaved forehead with a bandage covering her wound, they both looked horrified and stated "oh no!"  Counterclaimant also informed them that she was still suffering from a cranial disability that continued to affect her physical, emotional, and cognitive faculties, and she was still suffering and still under continued care of Dr. Lauren Schwartz and Dr. Arthur Drossiers who saved her life.

11.     During the initial consultation Ms. Wildeveld agreed to represent Counterclaimant for the MEDICAL MALPRACTICE MATTER on a contingency fee.  Then Ms. Rasmussen handed Counterclaimant a HIPA Release Form, which Counterclaimant signed.  Counterclaimant

4

then provided her with a hard copy of her most recent hospital stay's medical records from the last emergency surgery, performed by the Florida surgeons at Good Samaritan Medical Center. Counterclaimant handed Ms. Rasmussen her medical records, she then walked out of the room, returned stating she scanned the records and handed them back to Counterclaimant, but failed to provide Counterclaimant with a her copy of the HIPA Release Form she signed.

12.    During the conversation concerning the MEDICAL MALPRACTICE, Counterclaimant brought up the PennyMac case that was pending in Nevada state court when learning that Ms. Wildeveld was her neighbor, she then inquired about her home, knowing that it has been involved in litigation for many years which then sparked further conversation. Counterclaimant gave them a short explanation of the pending case with PennyMac then shared her frustrations about Attorney Thomas Michaelidis's behavior in handling the case, causing her unnecessary stress when she belatedly learned he had missed critical deadlines, failed to disclose her expert witnesses to the court and failed to timely file my her evidence for the Trespassing Claim, that seemed purposeful.  His continued inaction was jeopardizing Counterclaimant's ability to prevail in the case.  He was clearly taking advantage of Counterclaimant's debilitating condition; being so ill Counterclaimant was unable to supervise his activities. Ms. Rasmussen stated that Mr. Michaelidis has been in trouble before and is not a good attorney; she instilled fear of loss, and convinced Counterclaimant, he would continue to jeopardize and damage the case.

13.    Between April 9, 2020 and May 1, 2020 after Wildeveld agreed to initiate the MEDICAL MALPRACTICE CASE from their Los Angeles office and will co-counsel with "Josh" on a contingency fee.  Counterclaimant learned from Dr. Youngblood that Ms. Wildeveld told her that her associate declined to co-counsel with her on the MEDICAL MALPRACTICE

CASE because he was early in his career and did not want to go against the prominent surgeons knowing that they were highly respected in the medical and legal community; he felt that it would stain his reputation.

14.     Ms. Wildeveld and Ms. Rasmussen failed to inform her of their associate named "Josh "declining to work with them intentionally keeping it to themselves.  Thereafter Counterclaimant informed Ms. Rasmussen in a telephone conversation that Dr. Youngblood told her that Josh declined to associate with them, she was surprised that she was aware of that, then stated "I know, I don't understand why" then she told her not to worry that they are looking for another associate in California to co-counsel.

15.     Then on May 1, 2020, Counterclaimant received an email from Ms. Rasmussen informing her that she and Ms. Wildeveld were in contact with a San Diego Attorney to possibly co-counsel.  Additionally, she requested that she provide her with a detailed timeline of the medical events leading up to when she discovered malpractice and to provide her with the names of all the doctors that were involved.  Counterclaimant responded timely, emailed her the timeline and the contact information for the doctor's that were involved.  She also states in this same email that:

"California also requires that notices go out 90 days prior to filing a lawsuit.  It is statutory requirement.  Once the notice is sent, it will toll the one year statute of limitations and has the effect of extending the statue for 90 days.  The notice is basically something that says I believe you were negligent.  More on that in a minute.  There have been COVID orders entered in California that have tolled certain deadlines, but we are not sure when the orders were entered and if there is an extension to file medical malpractice cases due to COVID.  If so that would be helpful, but the order would have to have been entered prior to March 27, 2020 which is what Ken thinks your statute of limitations may be.  Ken is going to look up this information or both the state of California and Los Angeles County were your suit would be filed.

16.     They discussed whether or not negligence at the subsequent surgeries could be pursued based on what she learned after the November surgery in Florida.  In short, it's possible,

but it would be difficult to assess where the damages came from, e.g., first surgery, second surgery, third surgery, and it would be messy, and we would have to do a cost/benefit analysis as to whether it is beneficial to proceed."

17.    Wildeveld failed to keep Counterclaimant updated over her concerns and never definitively answered Counterclaimant or confirmed such, constantly diverting her attention to the PennyMac case.

18.    Counterclaimant trusted that Counter defendant knew what they were doing and would keep Counterclaimant informed knowing that she was too ill to stay focused on their legal strategies and research.

19.    Ms. Rasmussen also stated in her email on May 1, 2020:

"We decided that we need to get the notices out immediately and send them by certified mail on Monday.  In order to do that, we need to know who to send them to, including doctors, surgeons, physician assistants.  So, please send me an email with as many names as you can recall and tell me when/where they were involved.  We need to be as accurate as possible, without having your complete medical records."

20.    On May 4, 2020, Counterclaimant received an email from Ms. Malone, Wildeveld's Legal Assistant 90-day notices letters.  Ms. Malone's email:

"Good Afternoon, Per our telephone conversation, attached please find the 90-Day Notice letters for your signature.  Please sign and return to our office so that they can be sent certified mail today. Sincerely, Jessica Malone, Legal Assistant"

21.    Ms. Rasmussen drafted 5 letters to the doctors that were involved as follows:

"May 4, 2020          SENT VIA CERTIFIED MAIL
Re:    Potential Medical Malpractice Claim of Tracy L. Hurst

Dear Dr. Black,

You are hereby notified, pursuant to section 364 of the California Code of Civil Procedure, that within ninety (90) or more days from the date of this notice, the above-named individual intends to commence action against you as a defendant.  This Action will be based on your negligent surgical intervention and/or your failure to timely and/or properly address post-operative complications resulting from your surgical intervention and/or your failure to provide

proper post surgical care.  As a result of your negligence, I have suffered injury and damage including, but not limited to, the removal of skull flap, leakage of brain tissue and fluid, severe infection, and cognitive neurological damage, which was diagnosed on or after November 14, 2019.

Detriment and loss sustained by Tracy Hurst include:
a)      Past and future medical and related expenses in a sum not yet fully ascertained
b)      Past and future loss of earnings and future earning capacity in a sum not yet fully ascertained; and
c)      Physical and emotional pain and suffering.

If you or your insurance carrier require additional information concerning this matter or wish to discuss it in greater detail, please direct all further inquiries to the undersigned.

Sincerely,

Tracy Hurst-Castl
28128 Pacific Coast Highway, #150
Malibu, CA  90265
Cc:  P.O. Box 35937
        Las Vegas, NV  89133"

22.     Counterclaimant signed the letters, then her ex-husband Johnnie personally delivered them to Wildeveld's office to be mailed certified with the returned receipts requested to be mailed back to their office.  She was never notified that they received the returned receipts.

23.     Then on May 12, 2020, Counterclaimant texted Ms. Rasmussen as follows:

**"Hi Lisa…I received a call from a representative referencing the letter for Dr. Black & Dr. Sherman.  She left a message for me to contact her.  Do you want me to respond?"**

Ms. Rasmussen's response to text:
"Let's talk first."

Tracy's response:
"Ok call me when convenient for you."

24.     On May 13, 2020, Counterclaimant texted Ms. Rasmussen:

"We should talk soon she tried calling me again and I'm hoping she doesn't catch me off guard calling from various/different numbers.  Pls call me at your earliest convenience."

25.      Then on May 26, 2020, Counterclaimant emailed Ms. Rasmussen notifying her that she received a letter responding to her "90-Day Notice" that she sent out to the doctor's. Then the doctor's insurance carrier responded as follows:

**"Re: Malpractice Correspondence**
**Hi Lisa,**
**FYI-I received this letter in the mail Re:  Dr. Black & Dr. Sherman response to the letter."**

Letter from doctors insurance carrier states:

"Sedgwick
P.O. Box 17748
Lexington, KY  40512-4478

May 12, 2020

Ms. Tracy Hurst-Castl
28128 Pacific Coast Highway, #150
Malibu, CA  90265

P.O. Box 35937
Las Vegas, NV 89133

RE:      Our Client:             Keith Black, MD, Randolph Sherman, MD
          Date of Loss:           To be determined
          Our File #:              2020687002

Dear Ms. Hurst-Castl:
          Sedgwick is the third-party claims administrator for Cedars-Sinai Medical Center. ("CSMC"), Keith Black, MD and Randolph Sherman, MD.  CSMC referred your 5-4-2020 letters Sedgwick for further handling, and your claim has been assigned to me.  Kindly direct all future correspondence and inquiries regarding your claim to my attention at the above-noted address.  Please reference our file number on all correspondence.

          Would you be so kind as to provide further details of the incident including your theories of negligence as against Drs. Black and Sherman.  I can be reached at 562-492-1842.  If we are unable to connect by phone, please email at: kate.locurto@sedgwick.com if you would like to set up an appointment to discuss this matter by phone.

          As a routine part of our investigation, it will be necessary to secure medical and hospital records for your past and subsequent treatment.  I have enclosed authorization forms for you to sign allowing us to obtain those medical and/or hospital records.  Be advised that the language in

the release forms is dictated by State and Federal law and cannot be changed.  Please complete one form for each medical provider with whom you have treated and return original signed forms to me as soon as possible.  I will not need a medical authorization for Cedars-Sinai Medical Center.

In addition to providing medical authorizations, please advise specifically what you are claiming Drs. Black and Sherman did or failed to do that caused you injury that resulted in damages.  Please be specific as to nature of injury and damages.  It is your responsibility as the individual making a claim to provide the requested information and to prove your claim.  You will need to be able to show that the hospital failed to meet the standard of care and in failing to meet the standard of care caused your injury.  It is my responsibility to investigate allegations and documentation presented by a person making a claim and to determine if the claim has merit.

Our undertaking of this investigation into your claim should not be construed as an admission of liability, nor should this correspondence or our communications with you be construed as a waiver of, or estoppels to, any affirmative defense available to Drs. Black and Sherman, including but not limited to the Statute of Limitations.
Sincerely,

Kate LoCurto
Sr. Professional Liability Claim Specialist
Kate.LoCurto@sedgwick.com
(562)492-1842  Direct Line
(562)492-1865  Fax "

Ms. Rasmussen responded the same day as follows:

"Ok. I'll have to figure out how Ken recommends we respond
Lisa"

26.    Thereafter Counterclaimant reasonably relied on Wildeveld's legal advice that they were keeping their promise to file the MEDICAL MALPRACTICE CASE and would respond accordingly to the Cedar Sinai surgeons Sr. Professional Liability Claim Specialist Ms. Kate LoCurto.

27.    Belatedly, Counterclaimant was shocked when she learned that Ms. Rasmussen failed to respond to Ms. LoCurto's voice messages and ignored her correspondence.  Counter defendant sabotaged Counterclaimant's efforts for redress the doctor's gross negligence.

28.     Counter Defendant (Lisa Rasmussen) was negligent, and intentionally failed to communicate with Counterclaimant after her several requests asking for guidance and instruction when Counterclaimant received a letter from Cedar Sinai's Sr. Claims Specialist, Ms. LoCutos. Counterclaimant promptly forwarded the letter, despite Counter Defendant knowing that Counterclaimant was very ill needing their assistance and stated that she was incapable of handling the matter on her own without legal knowledge and being so ill. The Counterclaimant trusted The Law Office of Kristina Wildeveld & Associates Office to protect her rights as they promised.

29.     Ms. Rasmussen's led Counterclaimant to believe that she was handling the MEDICAL MALPRACTICE MATTER.

30.     On May 21, 2020,  Counterclaimant emailed Ms. Rasmussen and asked her as follows:

> "Have you heard from the California Lawyer has he made his decision if he will be taking my case or not?"

Defendant (Lisa Rasmussen) intentionally failed to respond and ignored Counterclaimant question.

31.     Counterclaimant also notified Ms. Rasmussen of her upcoming surgery date June 24, 2020, in Florida and that she completed a "Continuity of Care Request Form" submitting to her insurance carrier for payment approving her upcoming surgery in Florida, thereafter the insurance carrier declined to pay for the Florida surgery. Counterclaimant also asked her if she needed a specific kind of lawyer to assist her with the process in addressing the insurance company declined coverage for her continuity of care.  She stated it would be an uphill battle and would contact an associate to assist her with finding a California surgical team that her insurance company would cover.

32.     On May 21, 2020, Counterclaimant received an email response from Ms. Rasmussen that states:

On May 21, 2020, at 6:55 PM, Lisa Rasmussen <Lisa@veldlaw.com> wrote:

> "We need to find someone we can trust in your network. I think battling the insurance company is too uphill and you need the surgery done.
> Let me make a call to someone I trust to find out more information.
> Lisa"

33.     Then on May 22, 2020, Ms. Rasmussen email introducing her associate Mr. Chip as follows:

chip@nextgenmed.net
Fri 5/22/2020 4:11 PM
"Tracy and Chip,

I am introducing you in this email.

Chip, Tracy's number is (702) 739-4464.  She is cc'd in this email.  I have talked to Tracy and have explained attorney-client privilege and how awesome you are.  I am also sending you another email with more medical records from Florida and some narratives that Tracy wrote on the timeline that I think will be helpful to you. Lisa"

34.     Through email on June 1, 2020, Mr. Chip contacted Counterclaimant and agreed to assist her in identifying a medical team, stating that's what he does.  Johnnie and Counterclaimant had a telephone conversation to further discuss her complex medical procedure and insurance carrier issues needing to identify a medical team that the insurance carrier would cover.  Nothing ever became of that conversation; Mr. Chip was unable to assist her.

35.     On June 10, 2020, Counterclaimant emailed Ms. Rasmussen telling her that Johnnie wanted to have a conversation with her about the MEDICAL MALPRACTICE CASE; Counterclaimant also stated in her email that **"Currently I'm not doing well mentally or emotionally he certainly has his hands full care giving for me."** She stated he wanted to have

a direct conversation with the San Diego Attorney that she supposedly recruited to co-counsel with her.

36.    On or around June 16, 2020, Johnnie and Ms. Rasmussen had a telephone conversation that became heated where Ms. Rasmussen became very defensive with Johnnie when he questions about her progress; he finally demanded Mr. Sigelman's contact information, wanting to have a direct conversation with him for more clarity.  Ms. Rasmussen could not answer most of Johnnie's questions, she reluctantly provided him with Mr. Sigelman's cellular phone number.

37.    Thereafter, approximately a week or so later, Johnnie and Counterclaimant had a conference call with Mr. Sigelman, he asked many questions about the medical events leading up to the discovered medical malpractice and answered Johnnie's questions.  The conversation ended with Mr. Sigelman stating he would take another look at the case but would need additional medical records, and that he was unsure of the Statute of Limitations due to the COVID California tolling orders, he also stated he would do further research and will get back to Attorney's Wildeveld and Rasmussen.

38.    On July 6, 2020, Counterclaimant emailed Ms. Rasmussen stating, she was concerned about the PennyMac's trial date and the Judge's request to be notified the status of Counterclaimants health condition 60-days prior to the trial date September 8, 2020.  The Judge requested to be noticed if the Counterclaimant would be unable to participate in the trial.   Ms. Rasmussen responded to Counterclaimants email stating:

**"I'm not sure what to tell the court, maybe request an extension of this deadline?"**

39.    Counterclaimant found it to be odd that Ms. Rasmussen responded with a question, despite knowing the Judge's prior request strictly to be notified.  Ms. Rasmussen being

13

the lawyer should have known how to answer with the appropriate motion/request, she was fully aware of Counterclaimants current and ongoing medical condition at all times.

Counterclaimant asked in the same email:

**"What is going on with Ken Sigelman?  Johnny was contacting him directly."**
**I responded on July 8, 2020 email:**
**"Hi Lisa,**

Counterclaimant responded on July 8, 2020 stating:

**Sorry for this delayed response. Yes I think its best we ask for an extension at this point. We don't really have a choice.**

40.    Johnnie and Counterclaimant had a conversation with Mr. Sigelman, and he advised them that he would take another look at the case, but will need additional medical records from Cedars Sinai's surgeons that had been requested, and he had a concern referencing Statute of Limitation may be a possible issue.

41.    Because of Counterclaimant's medical and mental condition she gave Johnnie a POA to handle her business affairs and legal matters on her behalf, she also states in her email (July 8, 2020) however, Ms. Rasmussen refused to recognize Johnnie as her advocate. Thereafter, when they wanted to collect their legal fees, Ms. Wildeveld left several voice message attempting to collect fees from Johnnie stating "you are the go to guy". Counterclaimant also states **"I'm very fragile emotionally and physically unable to deal with these issues it has become very overwhelming for me."**

42.    Attorney's Wildeveld and Rasmussen went silent on discussing anything about the MEDICAL MALPRACTICE CASE and their progress.  They purposely abandoned the MEDICAL MALPRACTICE CASE without Counterclaimants knowledge then pivoted and directed all her attention only onto the PennyMac case with immediacy of the upcoming trial

14

date, despite knowing that she **DID NOT** notify the Judge and failed to disclose to Counterclaimant. Ms. Rasmussen was well aware how ill she was with her energies and mind strictly on finding the appropriate medical team. Ms. Rasmussen was also completely aware that Counterclaimant was having extreme anxiety, experiencing daily panic attacks ruminating about having to participate in a trial due to Ms. Rasmussen's intentional negligence while suffering, cognitively and medically and in a debilitated state.

43.     Excerpt from January 5, 2021 email from Ms. Rasmussen to Counterclaimant and attached Final Invoice No. 234; she states:

> "We also worked to help you in addressing your potential medical malpractice issues. I maintained a separate account for that and we are not billing you for that, but you should know that I spent over 11 hours on that project and Kristina spent at least 3 hours on it. We also incurred costs for the certified mailings we made on your behalf, all in an attempt to preserve any claims you may have had with regard to potential medical malpractice issues. Again, we are not billing you for that, but they were additional efforts that we extended on your behalf."

44.     California has a one-year statute of limitations to file a medical malpractice claim.

45.     The Counter Defendant failed to timely file the MEDICAL MALPRACTICE CLAIM on behalf of the Counterclaimant and neglected to inform Counterclaimant that they had resigned then secretly abandoned their efforts in pursuing the MEDICAL MALPRACTICE claim, and failed to inform the Counterclaimant of the statute of limitation date. As a result, the Counterclaimant can no longer sue the doctors personally.

46.     Leaving a screw and sponge in the head of the Counterclaimant was gross negligence under California law.

47.     Defendant Counter Claimants emailed the Final Billing Invoice #234 to Counterclaimant on January 5, 2021. Defendant Counter Claimants Proof of Claim #6 in this case reflects on page 4 of 10 charging Counterclaimant for 32 missed monthly payments without

15

having a written agreement for monthly payments and failed to provide Counterclaimant

monthly billing statements:  May 2020-August 2020 & October 2020 through February 4, 2023.

48.    Billing Invoice #234 reflects payments made on April 2020 and September 2020.

Counterclaimant made her initial installment of $2500.00 per Wildeveld's "Attorney Fee"

(received paper receipt) then 5 days later on April 20, 2020 another installment of $2500.00

(received paper receipt)was made equaling the $5000.00 flat fee that was mutually agreed. See

April 20, 2020 email to Ms. Wildeveld from Counterclaimant **"subject: Payment paid in full

today".**

49.    Also, the Billing Invoice #234 reflects a payment that was made on September 10,

2020 for $2000 from Johnnie and his intention to reimburse Wildeveld for their out of pockets

expenses, deposition transcript & misc.court fees & costs etc…that Ms. Rasmussen complained

about on a telephone call mentioning the expense and having to pay for Counterclaimants last

minute Deposition Transcripts costing $1500 on a rush order.

50.    Counter Defendants intentionally misrepresented the reimbursement Johnnie paid

to be a monthly payment to collaborate an untruthful scheme that Counterclaimant promised to

make monthly payments, but failed to provide her with monthly billing statements or delinquent

notices.

51.    Wildeveld's Billing Invoice #234 pages 4 & 5 filed in their Proof of Claim #6 in

this case is a different version from the Counterclaimants version they provided her.  "Matter –

Castl v. GS" is omitted from Counterclaimants version.  Counter Defendants exposed wrongful

billing entries filing a fraudulent Proof of Claim #6 in this case and provided two different

versions of billing invoice #234, and has filed the same in various court records as exhibits in the

USDC CENTRAL DISTRICT OF CALIFORNIA The Law Offices of Kristina Wildeveld &

16

Associates v. Tracy Lee Hurst, et al, Case No. 2:21-cv-03122-JAK-AGR and in the EIGHTH

JUDICIAL DISTRICT COURT, CLARK COUNTY, NEVADA Case No. A-21-829963).

Counter Defendants filed a different version of their Billing Invoice #234 in Proof of Claim #6 in

this Bankruptcy case.

52.    Counter Defendants failed to clarify their hourly rate and intentionally omitted it

from their untitled fee agreement. Unbeknownst to her Counter Defendants charged additional

fees for trial without a fee agreement or Counterclaimants consent accumulating charges and

excessive fees without Counterclaimant's knowledge.

53.    Counter Defendants purposely omitted several email communications from the

billing entries to only hide the truth and facts of the events that took place putting

Counterclaimant in a false light only to collaborate the dishonest and deceitful scheme to force

Counterclaimant and unwillingly to be financially indebted to Counter Defendants firm for their

gain and to position themselves to receive a financial judgment to lien her properties.

54.    Counter Defendants failed to clarify their hourly rate and intentionally omitted it

from their untitled fee agreement. Unbeknownst to Counterclaimant, Counter Defendants

charged additional fees for trial without a fee agreement or Counterclaimants consent

accumulating charges and excessive fees without Counterclaimants' knowledge.

55.    Counter Defendants' agreement fails to identify case matter, case title or case

number, also fails to describe Counter Defendants' scope of work as was agreed.

56.    Counter Defendants altered and fabricated the fee agreement to reflect $2000.00

monthly payments, which lacked Counterclaimants' initials of acknowledgement beside the

written in "2000." This was not contained in the agreement when Counterclaimant signed, it was

left blank.

57.    Counter Defendants failed to provide monthly billing statements or invoices or delinquency notices. Counterclaimant received first Billing Invoice #196 on 10/2/2020 and Revised Billing Invoice #206 on October 26, 2020 and then a Final Billing Invoice #234 on January 5, 2021.

58.    There are hourly rate discrepancies on 1st billing invoice ($650 & $600).

59.    Counter Defendants failed to disclose their hourly billing rate and neglected to discuss or present Counterclaimant with a fee agreement for additional legal fees and trial costs.

60.    Counter Defendants unlawfully obtained Counterclaimants "SEALED" Divorce Decree without a court hearing or order, and without Counterclaimants or her husband's consent. Counterclaimant was not afforded the opportunity to objection to unsealing her Divorce Decree. In bad faith, Counter Defendants filed her Divorce Decree as an exhibit in their Motion for Summary Judgment in the Wildeveld v. Castl case.

61.    Additionally, Counter Defendant violated the HIPA act disclosing Counterclaimants private medical records as exhibits in their Motion to Continue Trial Date on September 1, 2020 Castl vs. PennyMac and was done without Counterclaimants' authorization or consent. Counter Defendant filed her medical records in a motion as an exhibit on the record without Counterclaimants' knowledge. A copy of the motion was emailed to Counterclaimant after Counter Defendants had filed it.

62.    Counter Defendants convinced Counterclaimant that she had no choice. Counterclaimant provided her medical records only to be used for the medical malpractice claim not the PennyMac civil case. Counter Defendants were provided numerous doctors' letters for evidence the detailed hospital records and various doctor progress reports were not necessary to expose in violation of her medical privacy.

63.    On numerous occasions Counter Defendants violated Attorney Client Privilege disclosing private communications in Wildeveld's complaint against Castl, including false accusations that they know are untrue.  They have used confidential information that was learned while representing her, and then used information against Counterclaimant.

## FIRST CLAIM FOR RELIEF
### (Negligence-Legal Malpractice)
### (All Counter Defendants)

63.    Counterclaimant repeats and realleges each and every allegation set forth above in paragraphs 1 through 62 and incorporate the same by reference as though fully set forth herein.

59.    The Counter Defendant was retained by the Counterclaimant to pursue a MEDICAL MALPRACTICE CLAIM for leaving a screw and sponge in her head after surgery.

60.    The Counter Defendant had a duty to preserve the Counterclaimant's rights by filing an action prior to the Statute of Limitations expiring.

61.    The Counter Defendant breached its duty to the Counterclaimant by failing to file a timely MEDICAL MALPRACTICE CLAIM.

62.    The Counter Defendant direct failure proximately caused the Counterclaimant damages by failing to timely file or preserves the Counterclaimants claim for MEDICAL MALPRACTICE.

63.    The Counterclaimant was damaged in excess of $1,000,000.00 as a direct result of the Counter Defendant's failure to preserve the Counterclaimant's MEDICAL MALPRACTICE CASE.

///

///

19

64.     As a result of Counter Defendant's conduct, Counterclaimant has been required to retain the services of an attorney in order to prosecute this action and is entitled to its attorneys' fees and costs for having to prosecute this action.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)
### (All Counter Defendants)

65.     Counterclaimant repeats and realleges each and every allegation set forth above in paragraphs 1 through 64 and incorporate the same by reference as though fully set forth herein.

66.     Counterclaimant and Counter Defendants entered into a valid and enforceable contract when they executed the Agreement.

67.     The consideration set forth in the Agreement was fair and reasonable.

68.     Counterclaimant had performed all conditions, covenants, and promises required to be performed in accordance with the Agreement.

69.     By reason of Counter Defendants failure to perform under the agreement, Counter Defendants materially breached their obligations pursuant to the Agreement.

70.     By reason of Counter Defendants material breach of the Agreement, Counterclaimant has suffered damages in an amount in excess of $1,000,000.00.

71.     It has been necessary for Counterclaimant to retain the services of an attorney to prosecute this action and, therefore, Counterclaimant is entitled to reasonable attorney's fees and costs, prejudgment interest, and such other and further relief the court deems proper resulting from this action.

///

///

///

## THIRD CLAIM FOR RELIEF
### (Breach of Implied Covenant of Good Faith and Fair Dealing)
### (Against all Defendants)

72.    Counterclaimant repeats and realleges each and every allegation set forth above in paragraphs 1 through 71 and incorporate the same by reference as though fully set forth herein.

73.    That there exists a valid and enforceable contract between Counterclaimant and Counter Defendants as set forth above.

74.    That each and every contract in incorporates an implied covenant of Good Faith and Fair Dealing.

75.    That in the contract averred herein, Counter Defendants owed to Counterclaimant a duty in Good Faith and Fair Dealing.

76.    That Counter Defendants breached their duty to Counterclaimant by performing in a manner that was unfaithful to the purpose of the contract.

77.    That as a consequence of Counter Defendants conduct, Counterclaimants' justified expectations were denied, and Counterclaimant has sustained damages in excess of $1,000,000.00, the exact amount of which shall be proven at the time of Trial of this matter.

78.    It has been necessary for Counterclaimant to retain the services of an attorney to prosecute this action and, therefore, Counterclaimant is entitled to reasonable attorney's fees and costs, prejudgment interest, and such other and further relief the court deems proper resulting from this action.

///

///

///

///

## FOURTH CLAIM FOR RELIEF

### (Fraud)
### (All Counter Defendants)

79.     Counterclaimant repeats and realleges each and every allegation set forth above in paragraphs 1 through 78 and incorporate the same by reference as though fully set forth herein.

80.     On February 28, 2023 the Defendant Law Office of Kristina Wildeveld filed a Proof of Claim #5.

81.     On February 28, 2023 the Defendant Law Office of Kristina Wildeveld filed Proof of Claim #6 and included Final Invoice #234.  The Defendant exposed wrongful billing entries filing a fraudulent Proof of Claim #6 in this case.  They provided two different versions of Billing Invoice #234, in various court records used as exhibits in the USDC CENTRAL DISTRICT OF CALIFORNIA The Law Offices of Kristina Wildeveld & Associates v. Tracy Lee Hurst, et al, Case No. 2:21-cv-03122-JAK-AGR and in the EIGHTH JUDICIAL DISTRICT COURT, CLARK COUNTY, NEVADA Case No. A-21-829963 filing a different version then the version filed in this case.

82.     The Billing Invoices were wrongfully tampered with and adjusted.

83.     Pages 4 & 5 of Billing Invoice #234 filed in the Defendants Proof of Claim #6 are clearly different versions.

84.     Billing Invoice #234 reflects **TWO MATTERS** on pages 4 & 5; **CASTL VS. GS matter** (Medical Malpractice) and **CASTL VS. PENNYMAC matter**; a different version was filed in THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES VS. TRACY LEE HURST, ET AL CASE NO.A-21-829963 lawsuit against Counterclaimant reflects only **ONE MATTER.**  Counter Defendants also included a copy of the "written agreement" untitled and Counterclaimant alleges the "written agreement" was altered and fabricated after she had

22

signed it.  Counter Defendants failed to provide her a copy of the "written agreement" immediately after being executed.

85.     That as a result of Counter Defendant(s)' conduct, it has become necessary for Counterclaimant to retain the services of an attorney to prosecute this matter, and Counterclaimant is entitled to an award of Plaintiffs reasonable attorneys' fees and costs incurred herein.

**See attached EXHIBITS "A", "B", and "C."**

**WHEREFORE**, Defendant/Counterclaimant TRACY LEE HURST-CASTL prays for judgment against Plaintiff/Counter Defendants THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES, LISA A. RASMUSSEN, ESQ., and KRISTINA WILDEVELD, ESQ., as follows:

1.     A judgment in an amount in excess $1,000,000.00.

2.     Reasonable attorneys' fees and all costs of the suit which were necessarily incurred herein;

3.     Punitive damages; and

4.     For such other and further relief as this Court may deem just and proper.

DATED this 30th day of June 2023.

**STEVEN L. YARMY, ATTORNEY AT LAW**

**/s/Steven L. Yarmy, Esq.**
Steven L. Yarmy, Esq.
Nevada Bar No. 8733
7464 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
Attorney for Adversary Defendant/Counterclaimant
Tracy Lee Hurst-Castl

**PROOF OF SERVICE**

I HEREBY CERTIFY under penalty of perjury that on June 28, 2023, true and correct

copies of the foregoing DEFENDANT TRACY LEE HURST-CASTL'S AMEMDED

COUNTERCLAIM were delivered via CM/ECF and properly addressed to following:

**Via CM/ECF system to:**

LISA A RASMUSSEN on behalf of Plaintiff THE LAW OFFICES OF KRISTINA
WILDEVELD & ASSOCIATES
Lisa@veldlaw.com, alex@veldlaw.com
**Via U.S. First Class Mail Postage Prepaid to:**

LISA A. RASMUSSEN, ESQ.
THE LAW OFFICES OF KRISTINA
WILDEVELD &ASSOCIATES
550 E. Charleston Blvd.
Suite A
Las Vegas, NV 89104

KRISTINA WILDEVELD, ESQ.
THE LAW OFFICES OF KRISTINA
WILDEVELD &ASSOCIATES
550 E. Charleston Blvd.
Suite A
Las Vegas, NV 89104


Dated this 30th day of June 2023.

**/s/Steven L. Yarmy, Esq.**
Steven L. Yarmy, Esq.
Nevada Bar No. 8733
7464 West Sahara Avenue
Las Vegas, Nevada 89117
(702) 586-3513
(702) 586-3690 FAX
sly@stevenyarmylaw.com
Attorney for Adversary Defendant/Counterclaimant
Tract Lee Hurst-Castl

///

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "A"

# EXHIBIT A

## TRACY L. HURST-CASTL'S VERSION OF BILLING INVOICE #234



THE LAW OFFICES OF
# KRISTINA WILDEVELD & ASSOCIATES
*Criminal Defense, Complex Criminal and Civil Litigation, Lobbying*    *Appeals, Pardons, Post-Convictions, Juvenile*
Nevada    California

500 E Charleston Blvd., Suite A
Las Vegas, NV 89104
702-222-0007

January 05, 2021

**Tracey Hurst**
Hurst-Castl, Tracy

**Invoice Number: 234**
Invoice Period: 09-01-2020 - 01-05-2021

Payment Terms: Upon Receipt

**RE: Castl vs PennyMaC**

## Time Details

| Date | Professional | Description | Hours | Rate | Amount |
|------|--------------|-------------|-------|------|--------|
| 09-30-2020 | Lisa Rasmussen | Reviewed Pennymac's Proposal order. | 0.20 | 600.00 | 120.00 |
| 10-01-2020 | Lisa Rasmussen | Meeting with Tracy and Johnnie. | 1.00 | 600.00 | 600.00 |
| 10-01-2020 | Lisa Rasmussen | Review order to prepare for meeting | 0.20 | 600.00 | 120.00 |
| 10-02-2020 | Lisa Rasmussen | Revise Pennymac's proposed order detailed comments. | 3.20 | 600.00 | 1,920.00 |
| 10-02-2020 | Lisa Rasmussen | Email correspondence to and from opposing counsel (x8) regarding proposed order. | 0.20 | 600.00 | 120.00 |
| 10-03-2020 | Lisa Rasmussen | Emails to and from opposing counsel regarding my revisions. | 0.30 | 600.00 | 180.00 |
| 10-04-2020 | Lisa Rasmussen | Prepare our own proposed order; research on standing issue. | 4.30 | 600.00 | 2,580.00 |
| 10-05-2020 | Lisa Rasmussen | Emails with opposing counsel and Tracy regarding proposed order. | 0.30 | 600.00 | 180.00 |

We appreciate your business and your confidence in our firm.          Page   1   of   5

| Date | Professional | Description | Hours | Rate | Amount |
|------|-------------|-------------|-------|------|--------|
| 10-06-2020 | Lisa Rasmussen | Revisions to FFCOL per emails with Brittany Wood; email regarding same. | 0.50 | 600.00 | 300.00 |
| 10-06-2020 | Lisa Rasmussen | Additional revisions and emails with Brittany. Email to client. | 0.30 | 600.00 | 180.00 |
| 10-06-2020 | Lisa Rasmussen | Additional research on standing issue | 1.00 | 600.00 | 600.00 |
| 10-07-2020 | Lisa Rasmussen | Prepare our own proposed order and submit to the Court as a contested order. | 0.70 | 600.00 | 420.00 |
| 10-09-2020 | Lisa Rasmussen | Additional research on standing issue; there is no good case law supporting our position. | 0.90 | 600.00 | 540.00 |
| 10-27-2020 | Lisa Rasmussen | Meeting with Tracy requesting plan for payment of legal fees. No charge for this meeting. | 0.70 | | No Charge |
| 11-13-2020 | Lisa Rasmussen | Email correspondence to and from Rex Gardner, asking if we can resolve; email to Tracy re same. | 0.10 | 600.00 | 60.00 |
| 11-16-2020 | Lisa Rasmussen | Follow up emails to Rex letting him know I conveyed his message about proposed resolution. | 0.10 | 600.00 | 60.00 |
| 11-30-2020 | Lisa Rasmussen | Email correspondence to and from Tracy regarding proposed resolution. | 0.10 | 600.00 | 60.00 |
| 12-04-2020 | Lisa Rasmussen | Review proposed findings of fact, conclusions of law and order; review notice entry of judgment. | 0.20 | 600.00 | 120.00 |
| 12-04-2020 | Lisa Rasmussen | Emails to Tracy with order, findings, notice of entry of judgment, advising of deadline for appeal. | 0.10 | 600.00 | 60.00 |
| 12-18-2020 | Lisa Rasmussen | Email from Tracy; prepare sub of attorney and email to her. | 0.30 | 600.00 | 180.00 |
| 12-30-2020 | Lisa Rasmussen | Email correspondence to and from Tracy regarding sub of attorney; file sub of attorney. No charge for this. | 0.20 | | No Charge |
| 12-30-2020 | Lisa Rasmussen | Download all emails; organize and prepare electronic file on flash drive for Tracy. Courtesy no charge for this. | 1.00 | | No Charge |
| | | | **Total** | | 8,400.00 |

**Time Summary**

| Professional | Hours | Amount |
|--------------|-------|--------|
| Lisa Rasmussen | 15.90 | 8,400.00 |

| Professional | | | Hours | Amount |
|---|---|---|---|---|
| | | **Total** | | 8,400.00 |

**Expenses**

| Expense | Description | Price | Qty | Amount |
|---|---|---|---|---|
| E112 – Court fees | E112 – Court fees | 3.50 | 1 | 3.50 |
| E112 – Court fees | E112 – Court fees | 3.50 | 1 | 3.50 |
| None | Pacer Quarterly Charges - 3rd Qtr. (157 pp). | 15.70 | 1 | 15.70 |
| | | **Total Expenses** | | 22.70 |
| | | **Total for this Invoice** | | 8,422.70 |

We appreciate your business and your confidence in our firm.     Page   3   of   5

# Client Statement of Account
## As of 01-05-2021

| Matter | Balance Due |
|---|---|
| Castl vs PennyMaC | 59,998.58 |
| **Total Amount to Pay** | **59,998.58** |

## Castl vs PennyMaC

### Transactions

| Date | Transaction | Applied | Invoice | Amount |
|---|---|---|---|---|
| 09-29-2020 | Previous Balance | | | 51,575.88 |
| 01-05-2021 | Invoice 234 | | | 8,422.70 |
| | | | **Balance** | **59,998.58** |

### Open Invoices and Credits

| Date | Transaction | Amount | Applied | Balance |
|---|---|---|---|---|
| 04-14-2020 | Payment | (2,500.00) | | (2,500.00) |
| 04-20-2020 | Payment | (2,500.00) | | (2,500.00) |
| 09-10-2020 | Payment | (2,000.00) | | (2,000.00) |
| 09-29-2020 | Invoice 206 | 58,575.88 | | 58,575.88 |
| 01-05-2021 | Invoice 234 | 8,422.70 | | 8,422.70 |
| | | | **Balance** | **59,998.58** |

**Tracey Hurst**
Hurst-Castl, Tracy

January 05, 2021

**The Law Offices of Kristina Wildeveld & Associates**
500 E Charleston Blvd., Suite A
Las Vegas, NV 89104

**Invoice Number: 234**
Invoice Period: 09-01-2020 - 01-05-2021

## REMITTANCE COPY

RE: Castl vs PennyMaC

| | |
|---|---|
| **Fees** | 8,400.00 |
| **Expenses** | 22.70 |
| **Total for this Invoice** | 8,422.70 |
| **Previous Balance** | 51,575.88 |

| Matter | Balance Due |
|---|---|
| Castl vs PennyMaC | 59,998.58 |
| **Total Amount to Pay** | **59,998.58** |

### Open Invoices and Credits

| Date | Transaction | Matter | Amount | Applied | Balance |
|---|---|---|---|---|---|
| 04-14-2020 | Payment | Castl vs PennyMaC | (2,500.00) | | (2,500.00) |
| 04-20-2020 | Payment | Castl vs PennyMaC | (2,500.00) | | (2,500.00) |
| 09-10-2020 | Payment | Castl vs PennyMaC | (2,000.00) | | (2,000.00) |
| 09-29-2020 | Invoice 206 | Castl vs PennyMaC | 58,575.88 | | 58,575.88 |
| 01-05-2021 | Invoice 234 | Castl vs PennyMaC | 8,422.70 | | 8,422.70 |
| | | | | **Balance** | **59,998.58** |

We appreciate your business and your confidence in our firm.          Page  5  of  5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "B"

# EXHIBIT B

# THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES

## <u>PROOF OF CLAIM NO. 6</u>

## <u>DIFFERENT VERSION OF BILLING INVOICE #234</u>

## ITEMIZED STATEMENT OF PRINCIPAL AND ADDITIONAL FEES

The principle amount owed by Debtor is $59,998.59. *See* **Exhibit A.**

Debtor agreed that an additional fee of $50.00 would be applied to her balance each month that she missed a payment. *See* **Exhibit B.**

Debtor retained Creditor in April 2020 and made payments in the months of April 2020 and September 2020. *See* **Exhibit A.** Prior to the filing of the Petition in this case on February 4, 2023, Debtor missed making thirty-two (32) monthly payments, as follows:

### TRACY LEE HURST CASTL PAYMENTS

NP = No Payment Made

P = Payment Made

| 2020 | 2021 | 2022 | 2023 |
|------|------|------|------|
| | January – NP | January – NP | January – NP |
| | February – NP | February – NP | |
| | March – NP | March – NP | |
| April – P | April – NP | April - NP | |
| May – NP | May – NP | May – NP | |
| June – NP | June – NP | June – NP | |
| July – NP | July – NP | July – NP | |
| August – NP | August – NP | August – NP | |
| September – P | September – NP | September – NP | |
| October – NP | October – NP | October – NP | |
| November – NP | November – NP | November – NP | |
| December – NP | December – NP | December – NP | |

At $50.00 per each of the thirty-two (32) unpaid months, Debtor's delinquent payment fees total $1,600.00 ($50.00 x 32 months). *See* **Exhibits A and B.**

Debtor's total amount owed, $59,998.58 (principal) plus $1,600.00 (fees), is **$61,598.58.**

EXHIBIT A



THE LAW OFFICES OF
KRISTINA WILDEVELD & ASSOCIATES
Criminal Defense, Complex Criminal and Civil Litigation, Lobbying      Appeals, Pardons, Post-Convictions, Juvenile
Nevada      California

500 E Charleston Blvd., Suite A
Las Vegas, NV 89104
702-222-0007
**Tax ID:**

January 05, 2021

**Tracey Hurst**
Hurst-Castl, Tracy

**Invoice Number: 234**
Invoice Period: 09-01-2020 - 01-05-2021

Payment Terms: Upon Receipt

**RE: Castl vs PennyMaC**

## Time Details

| Date | Professional | Description | Hours | Rate | Amount |
|------|--------------|-------------|-------|------|--------|
| 09-30-2020 | Lisa Rasmussen | Reviewed Pennymac's Proposal order. | 0.20 | 600.00 | 120.00 |
| 10-01-2020 | Lisa Rasmussen | Review order to prepare for meeting | 0.20 | 600.00 | 120.00 |
| 10-01-2020 | Lisa Rasmussen | Meeting with Tracy and Johnnie. | 1.00 | 600.00 | 600.00 |
| 10-02-2020 | Lisa Rasmussen | Email correspondence to and from opposing counsel (x8) regarding proposed order. | 0.20 | 600.00 | 120.00 |
| 10-02-2020 | Lisa Rasmussen | Revise Pennymac's proposed order detailed comments. | 3.20 | 600.00 | 1,920.00 |
| 10-03-2020 | Lisa Rasmussen | Emails to and from opposing counsel regarding my revisions. | 0.30 | 600.00 | 180.00 |
| 10-04-2020 | Lisa Rasmussen | Prepare our own proposed order; research on standing issue. | 4.30 | 600.00 | 2,580.00 |
| 10-05-2020 | Lisa | Emails with opposing counsel and Tracy | 0.30 | 600.00 | 180.00 |

We appreciate your business and your confidence in our firm.          Page   1   of   5

| Date | Professional | Description | Hours | Rate | Amount |
|------|-------------|-------------|-------|------|--------|
| | Rasmussen | regarding proposed order. | | | |
| 10-06-2020 | Lisa Rasmussen | Revisions to FFCOL per emails with Brittany Wood; email regarding same. | 0.50 | 600.00 | 300.00 |
| 10-06-2020 | Lisa Rasmussen | Additional research on standing issue | 1.00 | 600.00 | 600.00 |
| 10-06-2020 | Lisa Rasmussen | Additional revisions and emails with Brittany. Email to client. | 0.30 | 600.00 | 180.00 |
| 10-07-2020 | Lisa Rasmussen | Prepare our own proposed order and submit to the Court as a contested order. | 0.70 | 600.00 | 420.00 |
| 10-09-2020 | Lisa Rasmussen | Additional research on standing issue; there is no good case law supporting our position. | 0.90 | 600.00 | 540.00 |
| 10-27-2020 | Lisa Rasmussen | Meeting with Tracy requesting plan for payment of legal fees. No charge for this meeting. | 0.70 | | No Charge |
| 11-13-2020 | Lisa Rasmussen | Email correspondence to and from Rex Gardner, asking if we can resolve; email to Tracy re same. | 0.10 | 600.00 | 60.00 |
| 11-16-2020 | Lisa Rasmussen | Follow up emails to Rex letting him know I conveyed his message about proposed resolution. | 0.10 | 600.00 | 60.00 |
| 11-30-2020 | Lisa Rasmussen | Email correspondence to and from Tracy regarding proposed resolution. | 0.10 | 600.00 | 60.00 |
| 12-04-2020 | Lisa Rasmussen | Review proposed findings of fact, conclusions of law and order; review notice entry of judgment. | 0.20 | 600.00 | 120.00 |
| 12-04-2020 | Lisa Rasmussen | Emails to Tracy with order, findings, notice of entry of judgment, advising of deadline for appeal. | 0.10 | 600.00 | 60.00 |
| 12-18-2020 | Lisa Rasmussen | Email from Tracy; prepare sub of attorney and email to her. | 0.30 | 600.00 | 180.00 |
| 12-30-2020 | Lisa Rasmussen | Email correspondence to and from Tracy regarding sub of attorney; file sub of attorney. No charge for this. | 0.20 | | No Charge |
| 12-30-2020 | Lisa Rasmussen | Download all emails; organize and prepare electronic file on flash drive for Tracy. Courtesy no charge for this. | 1.00 | | No Charge |
| | | | **Total** | | 8,400.00 |

**Time Summary**

We appreciate your business and your confidence in our firm.    Page  2  of  5

| Professional | | | | Hours | Amount |
|---|---|---|---|---|---|
| Lisa Rasmussen | | | | 15.90 | 8,400.00 |
| | | | Total | | 8,400.00 |

**Expenses**

| Expense | Description | Price | Qty | Amount |
|---|---|---|---|---|
| E112 - Court fees | E112 - Court fees | 3.50 | 1 | 3.50 |
| E112 - Court fees | E112 - Court fees | 3.50 | 1 | 3.50 |
| None | Pacer Quarterly Charges - 3rd Qtr. (157 pp). | 15.70 | 1 | 15.70 |
| | | **Total Expenses** | | 22.70 |
| | | **Total for this Invoice** | | 8,422.70 |

We appreciate your business and your confidence in our firm.    Page   3   of   5

## Client Statement of Account

As of 08-31-2021

| Matter | Balance Due |
|---|---|
| Castl vs GS | 6,886.30 |
| Castl vs PennyMaC | 59,998.58 |
| **Total Amount to Pay** | **66,884.88** |

### Castl vs GS

**Transactions**

| Date | Transaction | Applied | Invoice | Amount |
|---|---|---|---|---|
| 09-29-2020 | Previous Balance | | | 6,886.30 |
| | | | **Balance** | **6,886.30** |

**Open Invoices and Credits**

| Date | Transaction | Amount | Applied | Balance |
|---|---|---|---|---|
| 09-29-2020 | Invoice 252 | 6,886.30 | | 6,886.30 |
| | | | **Balance** | **6,886.30** |

### Castl vs PennyMaC

**Transactions**

| Date | Transaction | Applied | Invoice | Amount |
|---|---|---|---|---|
| 09-29-2020 | Previous Balance | | | 51,575.88 |
| 01-05-2021 | Invoice 234 | | | 8,422.70 |
| | | | **Balance** | **59,998.58** |

**Open Invoices and Credits**

| Date | Transaction | Amount | Applied | Balance |
|---|---|---|---|---|
| 04-14-2020 | Payment | (2,500.00) | | (2,500.00) |
| 04-20-2020 | Payment | (2,500.00) | | (2,500.00) |
| 09-10-2020 | Payment | (2,000.00) | | (2,000.00) |
| 09-29-2020 | Invoice 206 | 58,575.88 | | 58,575.88 |
| 01-05-2021 | Invoice 234 | 8,422.70 | | 8,422.70 |
| | | | **Balance** | **59,998.58** |

We appreciate your business and your confidence in our firm.        Page  4  of  5

**Tracey Hurst**
Hurst-Castl, Tracy

January 05, 2021

**The Law Offices of Kristina Wildeveld & Associates**
500 E Charleston Blvd., Suite A
Las Vegas, NV 89104

**Invoice Number: 234**
Invoice Period: 09-01-2020 – 01-05-2021

## REMITTANCE COPY

**RE: Castl vs PennyMaC**

| | |
|---|---:|
| **Fees** | 8,400.00 |
| **Expenses** | 22.70 |
| **Total for this Invoice** | 8,422.70 |
| **Previous Balance** | 58,462.18 |

| Matter | Balance Due |
|---|---:|
| Castl vs GS | 6,886.30 |
| Castl vs PennyMaC | 59,998.58 |
| **Total Amount to Pay** | **66,884.88** |

### Open Invoices and Credits

| Date | Transaction | Matter | Amount | Applied | Balance |
|---|---|---|---:|---|---:|
| 04-14-2020 | Payment | Castl vs PennyMaC | (2,500.00) | | (2,500.00) |
| 04-20-2020 | Payment | Castl vs PennyMaC | (2,500.00) | | (2,500.00) |
| 09-10-2020 | Payment | Castl vs PennyMaC | (2,000.00) | | (2,000.00) |
| 09-29-2020 | Invoice 206 | Castl vs PennyMaC | 58,575.88 | | 58,575.88 |
| 09-29-2020 | Invoice 252 | Castl vs GS | 6,886.30 | | 6,886.30 |
| 01-05-2021 | Invoice 234 | Castl vs PennyMaC | 8,422.70 | | 8,422.70 |
| | | | | **Balance** | **66,884.88** |

We appreciate your business and your confidence in our firm.          Page  5  of  5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "C"

# EXHIBIT C

## THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES

### PROOF OF CLAIM NO. 6

## UNTITLED AGREEMENT/"WRITTEN AGREEMENT"

**EXHIBIT B**

**THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES**
www.veldlaw.com

DATE: 4/14/20
Referred By:

| CLIENT INFORMATION | | |
|---|---|---|
| First Name: TrAcy Lee | Middle Name: | Last Name: Huest-Castl |

Date of Birth: /60    SSN: -3/62    ID #:

Email: tthargel@hotmail.com    Email Letters? (Y) N    Email Bills? (Y) N
Mailing Address: P.O. Box 35957    Home Phone
CO NV 89133    Mobile Phone (702) 739-4464
Work Phone

Other Contacts
1. Name Kelly Huest    Phone 702 682-2779    Relationship Son
2. Name Johnnie Castl    Phone 646 330-8819    Relationship X husband

Employer of Client    Phone    Monthly Salary $
US Citizen? Y N    Place of Birth: Burbank, CA    If no, what is your status?

**COURT DATE(S):**
1 Case No.    Court    Proceeding    Date    Time
2 Case No.    Court    Proceeding    Date    Time

**CHARGES**    PRIORS (If any)
1 _____ Year
2 _____ Year
3 _____ Year

**STOP: OFFICE USE ONLY**    Consult Fee: C DC CC MC CK:
Std ofa hourly rates
**Fees:** fixed, non-refundable FLAT FEE for representation in proceedings up to and including _____, negotiations, PH or GJ and Writ and/or denial/dismissal and is set based on the experience of the office. The fee is to be paid as follows: $_____ initial retainer paid upfront; remaining balance payable at a rate of at least $2000 per month commencing on the payment date indicated below. Any outstanding balance/fees owed are due no later than seven (7) days prior to _____, PH, Trial, entry of plea, denial/dismissal of charges or whichever occurs first, regardless of any payment plan scheduled. All criminal retainers are deemed earned when received and will not be held in Trust. The Law Firm understands all funds used as payment are derived from a legal source. Unless otherwise specifically stated herein, this agreement does not include representation at Trial or obligate the Law Firm or member attorneys to prepare or file an appeal or to defend any re-filed charge(s). Proceedings not included in this agreement will incur additional attorney's fees. This fee does not include any applicable charges that may be incurred, including but not limited to restitution, fines, court fees, discovery fees, filing fees, witness fees, investigator costs, collection costs, travel fees, or any other miscellaneous fees. Client is solely responsible for all fees incurred and must pay all fees upon notice of the same. Pardons and Parole Petitions are considered the intellectual property of The Firm and are non-transferable or discoverable. The client file is the property of The Law Firm unless all of the fees are paid in full. Abuse and Neglect representation is for a 1 year period. Additional time will require an additional contract. There is a $75.00 fee to pull closed files plus copy fees of $0.35 per page.

**AGREEMENT FOR REPRESENTATION:** I HEREBY RETAIN KRISTINA WILDEVELD, ESQ. & ASSOCIATES ("Law Firm")
The Law Firm is hereby engaged to represent: _____ (Client) in the above matter(s). Client(s) and designated Fee Co-Payer(s) agree(s) to pay the Law Firm a retainer fee as described above in exchange for the specified legal services in connection with the matter(s) indicated herein. I understand that the Law Firm may associate or employ other counsel or marketing representative at the Law Firm's discretion provided there are no additional attorney's fees to Client. I promise to pay as set forth herein and pay the fees in full. I understand that no guarantee has been made regarding the outcome of my case(s) and that any outcome will not affect attorney fees owed or any applicable fees incurred. I further agree to adhere to my billing contract/payment plan and understand that if I miss a payment, a $50.00 fee will be applied to my balance each month until payments resume. _____ (INIT). I also understand that if I miss a payment, that this office reserves the right to discontinue any payment plan set and demand the outstanding balance in-full, payable immediately or withdraw as counsel. _____ (INIT). I further understand that the Law Firm may move to withdraw as counsel for Client if fees are not promptly paid. _____ (INIT). I understand a $100.00 fee applies for any Non-Sufficient Funds check posted on my account. _____ (INIT). I understand there is an additional $350.00 fee charged for each additional status check _____ (INIT). I understand that the hourly rate is $750.00 per hour for any fee dispute. _____ (INIT). By signing below, I hereby agree to the representation described herein and agree to the terms of this agreement.

| Retainer: $ 2,500.00 |
|---|
| C DC CC MO CK: |
| Payment Dates: |
| 1. / / monthly |
| 2. / / |
| 3. / / |
| 4. / / |
| 5. / / |
| (INIT) I agree to monthly reoccurring credit card payments. |
| Copy of picture ID: Y N |

Client Signature: Tracy L Huest-Castl    Date: 4/14/2020
Fee Co-Payer Name/Signature:    Date:
Attorney Signature: Lisa Rasmussen

Kristina Wildeveld    Dayvid Figler    Lisa Rasmussen    Caitlyn McAmis    Jim Hoffman    Eva Romero